## Case No. 6,745.

### HOVEY v. STEVENS.

[1 Woodb. & M. 290; [1] 2 Robb, Pat. Cas. 479.]

Circuit Court, D. Massachusetts. May Term, 1846.

INFRINGEMENT OF PATENT—INJUNCTION—PATENTABILITY OF INVENTION—SCOPE OF CLAIM —EVIDENCE—DECLARATIONS.

1. Where a bill is filed for an injunction against the use of a patent, and the answer denies the use of it, and also the originality of the invention, if the denial is supported by affidavits bringing the originality of the invention into doubt, an injunction will not issue till the parties settle the right in an action, which is pending between them at law, for a violation of the patent, unless the complainant shows, that he has for some time been in the undisturbed use and sale of his patent, or has recovered damages against others for the use of it.

2. Nor can a patent be aided in respect to such an use or such recoveries, if it be one useful in respect to another patent for another invention, where such an use and such recoveries have been had, unless it is connected in law to that patent and is a part of it.

3. It is doubtful whether a mere change in the mode of fastening knives on a cylinder to be ground, or to fasten one instead of several, is a change in structure from an old machine sufficient to justify a patent for it.

[Cited in Teese v. Phelps, Case No. 13,819; Woodworth v. Rogers, Id. 18,018.]

4. If the respondent constructed and used his machine before the complainant took out a patent for his, it is not a justification, if he had seen and copied an improvement from the complainant's.

5. If the patentee claims, as a part of his invention, some things which are old and some new, he cannot succeed, without disclaiming what is old.

6. It should appear also with reasonable certainty, whether the complainant in his patent claims a new combination of old parts and things, or a new invention of new parts, and if not intelligible as to which is claimed, the patent may be void for uncertainty.

7. Declarations of a party, made before the dispute arose, in connection with acts, may be competent evidence for him, as tending to show what intentions then existed.

[Cited in Andrews v. Hovey, 124 U. S. 704, 8 Sup. Ct. 678.]

This was a bill in equity, filed April 14th, 1846, for an injunction against the defendant [Silas Stevens] not to make or use a machine "for grinding tools," for which a patent had been taken out by the plaintiff

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

[William Hovey], September 23d, 1845 [No. 4,204; reissued June 19, 1847, No. 96]. Among other things, the bill alleged that the plaintiff, before February 12th, 1844, had invented and obtained a patent for a machine called "Hovey's Spiral Revolving Straw-Cutter," which, on the 1st of April, 1845, was violated by the defendant and one E. Hovey, who were sued therefor, and the action against the defendant settled or compromised, and that against Hovey prosecuted to a verdict and judgment in favor of the plaintiff. It was further averred, that the machine for grinding tools was necessary to make the other useful, being adapted to grind the knives in the straw-cutter and being a highly beneficial machine for that purpose, and that it was copied and infringed upon by the defendant, October 1st, 1845, to an extent very injurious to the plaintiff. That for this an action at law has been instituted against him, but before a trial can be had, the damage is likely to be great, and the defendant is irresponsible, and, therefore, an immediate injunction is prayed for. Various other matters were detailed in the bill, but it is not necessary to repeat them, except as some of them may be mentioned in the opinion of the court. The answer denied the originality of the invention, and all the principal allegations affecting the defendant and was sworn to, accompanied by several affidavits. Others were put in by the plaintiff, which will be referred to in the opinion.

Mr. Hallett and Charles Sumner, for complainant.

Mr. Stanton and Charles L. Woodbury, for defendant.

WOODBURY, Circuit Justice. I shall pass by all the formal objections to the bill in this case, as being multifarious, and as seeking distinct objects, some of which are supposed by the defendant to be improper and untenable. Because a decision on the merits may be more satisfactory to both parties, if there be enough in the case to enable me to form one. Nor is it necessary to settle in detail the objections to some portions of the depositions, which are excepted to as incompetent; because my opinion will not rest on those portions where the declarations of third persons, not agents nor witnesses, are introduced by either side; or those of the parties are introduced by themselves, unless made before this dispute and proving the existence of certain inventions in connection with certain acts before a particular date. In such case, as developing a link in a transaction, they may be competent. See Burnham v. Rangeley [Case No. 2,176], and cases there cited.

Looking then, to the merits, before deciding whether the patent of the plaintiff for grinding tools has been violated or not, it is necessary to ascertain first, what is the extent and character of it; how are they, if this patent is considered as standing alone? and how are they, if it is considered as connected with the prior patent by the plaintiff for cutting straw? Standing alone, the patent itself purports to be merely for "a new and useful improvement in machinery for grinding tools." When we refer to the schedule annexed for a specific and more minute description of it, the patent is described to be "a new and useful machine for grinding the twisted or spiral cutters or knives used in the machine for cutting straw, and generally known as 'Hovey's Straw-Cutter.'" There is then added: "The nature of my invention consists in attaching the twisted (sometimes called spiral) blades or cutters to a flange, projecting from a stock, hung on journals in traversing carriage, so as to present the back of the cutter to be ground to the action of a grindstone or other reducing or polishing wheel, so that as the cutter on the carriage traverses lengthwise, it shall vibrate freely on the axis of the stock to which it is attached, to follow the twist of the blade, and grind it to a sharp edge, such as is required in cutting, by impinging the cutting edges against the surface of a cylinder by the rotation of the two cylinders or the cutting cylinder on a plane, the cutting being effected by a pressure towards the centre of the axis of the cylinder of knives. The reciprocating motion of the cutters during the traverse motion being governed by the spiral or twisted surface of the knife itself, or any thing analogous thereto." Had the specification closed here, or only made references afterwards to the drawings, and some particulars as to gearing and details in the construction, there could not be much doubt that the patentee intended to claim, as a part of his invention, the "attaching the twisted (sometimes called spiral) blade or cutters, to a flange projecting from a stock." But he proceeds to add another description of his invention, in which this part is omitted, and details it as being "to give to the stock to which the knives or cutters are attached, a reciprocating motion on its axis whilst it traverses longitudinally before the grinder. And therefore." says he again, in the summary which follows immediately in the close of his specification, "what I claim as my invention, and desire to secure by letters-patent, is giving to the spiral or twisted knife or cutter, attached to a flange in a line radiating (or nearly so) from the axis of the stock a traversing motion in the direction of its axis, in combination with a reciprocating rotary motion on its axis, when this latter motion is governed by the twisted plane of the cutter, or any thing essentially the same to enable the grinder to give the required bevel to the ground face and the proper line to the edge, substantially in the manner herein described."

From these two last descriptions of his invention, some doubt is cast over the fact,

whether the mode of attaching the cutter to a flange in the stock, was intended as a part of it or not. He says nothing about it in one of them, and in the other, it seems more natural to regard what is said about the attachment of the cutter, as a mere description of the machine, than as a part of the claim of what had been newly invented by him. This would confine the claim for inventive novelty as he had just before done, to the "traversing motion of the stock, in combination with a reciprocating rotary motion on its axis." From these last clauses, independent of the description in the commencement of the specification, I should come to the conclusion, that the attaching of the cutter to the stock was not claimed as his invention, but merely used as a part of his machine. But we can resort to the introduction of the specification as well as the summing up at the close, to ascertain the true extent of the claim. See the cases collected in Davoll v. Brown [Case No. 3,662]. Adverting to that, I am inclined to hold, for the purpose of this inquiry, that notwithstanding the second description of his invention, omitting entirely the attachment of the cutters and the final description of it, speaking of the attachment rather as a part of the machine, than a part of what he claimed as his invention, it may be regarded as a portion of that claim. Though in describing all machines, many parts mentioned are not new, nor claimed as what has been invented by the patentee, such as in this case the grindstone and the bands, and several other portions, yet at first he seems distinctly to claim this mode of attaching the knife as a part of his invention; and though not repeating that claim in another description afterwards, and leaving it somewhat ambiguous in the summing up, yet he does not expressly renounce it, and is therefore probably entitled to it. In the next place, considering the attachment to the knife as a part of the claim, can the whole invention be treated as a part and parcel of the former patent for the straw-cutter? The answer to this becomes material in the discussion of future points, on account of the longer possession enjoyed of the patent for the straw-cutter, and the verdicts which have been recovered for it, and the settlement made formerly for the use of it by the present defendant. But neither the patent nor specification for the straw-cutter, refers to the grinder, nor does the patent for the latter say any thing of the grinder being auxiliary to the straw-cutting machine. It is described there as an "instrument or machinery for grinding tools" generally; and from the evidence, it may be used to grind any tools, that need a bevel or chisel edge, and can be securely attached or fastened into the stock. But in the specification, as before detailed, it is described "as a new and useful machine for grinding the twisted or spiral cutter or knives used in the machine

for cutting straw, and generally known as 'Hovey's Straw-Cutter.'" It is not, however, claimed as having been invented with the other. Its originality has never been tried with the other. It is not taken out as a part of the other, nor is the oath to its originality extended so as to embrace the other. Isaacs v. Cooper [Id. 7,096]. And though from the evidence, as well as the description, it is, as averred in the bill, very useful and economical in the manufacture or use of the other, yet the patent for it being a separate independent patent, as is the machine, it must be tried on its own merits, and be protected according to the facts connected with its own operations and use. The next inquiry on the merits, then, arises and is whether the evidence shows an infringement on the patent for the grinder by the respondent, standing as it does alone and independent. There is some contradiction on this point. The respondent undoubtedly has used a grinding machine, where the transverse and rotary motions are probably combined as here, and probably the cutters or knives are attached to the stock in a like manner. I say probably, because the witnesses, who describe his machine as now used, do it in general terms as being like Hovey's in appearance, without going into details on this point, or producing the machine itself or a model of it. Perhaps E. Hovey's affidavit is an exception, and in some respects is particular enough, but not in others. The importance of greater distinctness on this point hereafter will be seen from the circumstance, that, by evidence on the part of the respondent, and, indeed, by admissions by the counsel for the plaintiff, the combination of these two motions is not new. Most of Blanchard's machines for turning unequal surfaces, contain them. If, then, the patent for the grinder claimed, as newly invented, the combination of those two motions and only that, the patent is not new, and the defendant has not violated it by using a combination, which was so long and so commonly employed before. But if he be considered as claiming also a new mode of attaching the knives or cutters in a stock in order to be ground, as we have been inclined to construe it for the purpose of this hearing; and if it be proved, that the defendant uses the same mode of attaching his knives to the stock, which seems probable, though not shown with much certainty, then the only consideration remaining under this head is, whether that kind of attachment or fastening is new, so as to be entitled to protection by a patent. This must be proved by the testimony of more than one witness, as urged by the counsel for the respondent, because the answer is responsive to the bill concerning an infringement, and denies any novelty whatever in the patent, and is sworn to. See Carpenter v. Providence Wash. Ins. Co., 4 How. [45 U. S.] 185. But Leonard Worcester, C. Whee-

lock, and Albert Curtis testify, that the machines in use several years ago for grinding clothiers' shears and other spiral knives, similar to one produced in court by the respondent, and proved to be prior in use, by Lyman Wilder's affidavit and letter, did not fasten the knives to a stock separately, but put in the cylinder to which the knives were attached, and fastened that, and ground all the knives together in that cylinder.

It further appears, that Hovey's cylinder, with all the knives attached as in his hay-cutter, can be so inserted and fastened to the stock, but are so close together as not to be then capable of being ground in that way to a chisel edge, which is desirable; and hence each knife must be placed in separately, or a portion of the knives be removed from the cylinder, the others standing further apart, and then in that position they are capable of being ground together. I do not see any evidence on the part of the defendant, which specially rebuts this, or proves either that the defendant's machine does not attach the knives separately to the stock, or if it does, that such a mode of attaching the knives was in use many years previous to Hovey's invention of the grinder. Showing either of these would have ended this inquiry. But this not having been done, we must proceed to the next question, which is, whether such a change from the old form is a material one, and though new in form is also new in principle? A novelty in principle may consist in a new and valuable mode of applying an old power; effecting it, not merely by a new instrument or form of the machine or any mere equivalent, but by something giving a new or greater advantage. Now it is certain that one knife in Hovey's hay-cutter, and in others like his, may need to be ground alone, and though there it could be ground, held in the hand or on the old plan, while fastened in the cylinder, if as far apart from the other knives as the shears are in the old shear cutters for cloth; yet it could not be so ground if set in the cylinder so near others as in Hovey's machine. And for aught which appears, it could not be so ground, if set as near together as in the defendant's machines, they being, I understand, like Hovey's in this respect, and differing only in the manner of securing the knives on the cylinder by rings at the ends rather than by screws. It may seem a small change to attach single knives in a stock to grind them, rather than several of them on a cylinder; but is, perhaps, a material one in all cases, like Hovey's and Stevens's machines, where the knives are fastened so close together on the cylinder as not to be able to be ground to the proper edge together while on the cylinder. It is also in appearance a small change, and, as one witness expresses it, a very obvious change to any mechanic, when the occasion or the exigency arises for such a convenience, to alter the means of attaching a cylinder with several knives in it to the stock, so as to attach it with a single knife or cutter in it, or with a flange and one knife screwed to the flange. And I should like to hear more evidence from mechanics and experts, whether such a change merely in the fastening is a change of principle, or is any thing which is new in principle; or whether one mode is not a mere equivalent for the other, so as to fix one knife instead of several in one cylinder or flange on a cylinder, whenever it becomes convenient or necessary to grind one knife alone. The testimony of Nourse and Eddy throws considerable doubt over the novelty of this in point of principle, and so do the cases cited in Phil. Pat. 100, 125. But at present, I feel disposed to regard it as new, though with some hesitancy. The rotary motion possibly may be shown to be imparted differently to the single knife attached to the stock in Hovey's grinder, from what it is when the cylinder is attached as in Stevens's. My own opinion at first was, that the rotary motion in the old machines was obtained by the ends of the axle of the cylinder resting loose enough to revolve easily in holes or boxes or arbours, and the ends in Hovey's being fixed and not revolving, but the piece to which the flange was attached being hollow, and revolving on a solid bar. But I find, on further examination, that both the cylinder to which the old knives were attached and the stock to which the single knife is attached, have their ends resting on screws which enter each end, and revolve probably in the same manner. And so may Stevens's new machine revolve; though his old one, which is present, is believed not to. If this be so on seeing Stevens's machine now in use, and having it critically examined, the consequence must be, that the only difference between his and the old machine for grinding, or between Hovey's and the old ones, will be, that in the old ones all the knives revolved as attached to a cylinder, and in the others only one may revolve so attached. For the stock to which the flange for the single knife is attached, may be and is a cylinder, or a cylinder with a flange. If there be any other difference between the grinders, it will consist in the fastening this single knife to the flange with screws in Hovey's machine, while in Stevens's it may be so fastened or may be secured at the ends, as in the old machines, by rings or otherwise, and not by screws. More light and certainty on these particulars are desirable, and may, in the end, be very important. For without some difference in producing the rotary motion, a change merely in attaching several knives on a cylinder, to attaching but one, or in attaching that one to a flange on the cylinder by screws, instead of attaching it to the cylinder by rings at the end, hardly seems a sufficient change in form, or principle, or results, as to grinding, to justify a patent. In that event, this patent might be invalid without the further objection urged by the

defendant, that the grinder has neither new parts, nor a new combination. It would then be, as Nourse and Eddy testify, composed of changes from the old grinding machine, which are probably either formal or mere equivalents, and exhibit no new power or principle. In the case of Hovey's straw-cutting machine, which has been adverted to in argument, the new fastening by screws was such as enabled a party to adjust the knives, if becoming uneven or unequal in width, and when they otherwise would not be adjusted. It was likewise so constructed as to take one out, and grind or repair it alone with ease, when before it could not be. But here no such gain as to adjustment in grinding is obtained by this fastening of one to a flange by a screw, because one left alone in a stock, or at a greater distance from others, could be ground on the old cylinder as well as in the new way. Leaving this point, then, to be settled definitely hereafter on fuller testimony and examination by experts, (and I leave it for this inquiry and for this only, as if favorable to the plaintiff, in order to reach other matters,) I shall proceed to the next question that is controverted. Nothing is said here as to the permanent stock itself being claimed in the patent as a new invention by the plaintiff, and hence I shall make no comments on that point.

The next question is, whether the respondent did not himself, before Hovey obtained his patent, discover or construct this new mode of fastening; and if he did, whether it would be reasonable or legal to restrict him in the use of it, because Hovey afterwards procured a patent for it. As to this, on the whole evidence, it is very clear that Stevens erected his machine for grinding before Hovey obtained his patent. It is also proved that he had projected such a machine or contemplated it, before he saw Hovey's or had Fisher in his employment. It is further manifest, that all the parts of it insisted on, except the mode of attaching the single knives, had been in use and well known to mechanics for many years previously. At the same time, it is very evident that he did not perfect his machine as now used in all its parts till he had seen Hovey's, which was made as early as 1843. That a workman with him, by the name of Fisher, had before lived with Hovey, and used the grinder, and had afterwards re-examined Hovey's. And that the defendant's resembles Hovey's not only in general form and principle, but in some accidental defects. Under these circumstances, it becomes a very important question, whether he did not copy his invention in some respects from Hovey's, and especially as to the mode of attaching single knives, and giving to them a rotary motion. If he did this, without Hovey's consent, and before he made his machine public or sold it, I should think that his use of such a grinder, though begun before Hovey obtained his patent, ought not to be protected. It would be a use by fraud, and could not be contemplated and saved under Act 1839, c. 88, § 7 (5 Stat. 354). To be sure, that act in broad terms allows any one to use and vend a machine, which he has purchased or constructed before the inventor applied for a patent. This, however, I think must be construed to mean a purchase of the inventor or his grantee, or a construction by their consent, or by his own ingenuity. Hence, if he himself invented it before, or if he copied it before from other inventors than Hovey; or if Hovey consented to the construction or use of one machine of this kind by Stevens for grinding, of which there is some testimony, then the respondent should not be restrained in the continued use of that one machine, whether we look to the act of congress itself, or to what is reasonable and equitable, independent of the act. Morris v. Huntington [Case No. 9,831]. But, as before remarked, if he constructed it by a fraud and piracy on the inventor, I shall hold, for the purpose of this examination, that he is not protected. So grave a question as this of fraud, and where the testimony as now, is conflicting, it would hardly be decorous for me to settle in this preliminary inquiry, when the same question is soon to be tried by a jury in the action now pending at law between these same parties, for a violation of this patent. And the more especially is it inexpedient for me to settle it under such circumstances, when it does not appear that in the mean time any very great additional damage can occur to the plaintiff; or that the defendant may not have sufficient property, though not wealthy, to respond for such further small injury as is likely to occur during the present term, till a trial will probably be had.

In addition to these considerations against deciding the question of fraud now, and, if adjudged for the plaintiff, against now issuing an injunction, there are several others of some moment. One is this: Does the plaintiff claim this mode of fastening as only a part of a new combination, though old in and of itself, separately as a piece of machinery? Or does he claim to have invented originally that mode of fastening? The specification is somewhat uncertain on this point, and as it has not been much adverted to in argument, and the construction adopted may have a decisive influence on the result in the trial at law, I do not propose to decide it now. If the specification be so uncertain in this respect to be unintelligible, it would be void, and it will have to be surrendered and amended. Lowell v. Lewis [Case No. 8,568]. But if it be clear and distinct, as being only a new combination, then there is no claim to invention except in regard to the combination, and no parts of the machine need be proved to be novel. While on the contrary, if it be clear that the mode of fastening is claimed as newly invented by him, then he must prove that as new, and also satisfy the court that he can unite, in the

same patent, claims for a new invention of one part, and for a new combination of that and a rotary with a transverse motion, which is old. Or that he can claim them as a new combination throughout, when it is new only in part. Whittemore v. Cutter [Id. 17,600]. If he does not so satisfy the court, he will, in that event, likewise have to take out a new specification for only one of those claims, and a new patent for the other, or disclaim such part as is not new. See Whittemore v. Cutter [supra]; Lowell v. Lewis [supra]; Evans v. Eaton [Case No. 4,560]; Sullivan v. Redfield [Id. 13,597].

Again, in respect to the present application. An injunction, when asked before the trial and resisted, is never to issue as a matter of course till the trial. There must, in such case, in order to obtain it in advance, be proof not only of a patent, but also of some length of use under it, or some considerable sales of it, or some recovery, establishing the validity of the patent, so as to impart to it weight or strength as valid beyond the mere issue of it. Here are neither. The patent issued only in September, 1845, and the offence is averred to have happened in the next month, and the proof is, that the patent was not taken out at all till the plaintiff saw the defendant use the machine, and then took out the patent in order to prosecute him. There have been no sales of it proved. There has, likewise, been no recovery or settlement shown by anybody, tending to establish the validity of the patent for the grinder, but only of the hay-cutter, a separate and independent machine, as before explained; and the invention and validity of which are questions distinct from those in the grinder, and in discussing which in trials heretofore, it is not pretended that the invention or validity of the grinder have been canvassed at all, or in any way passed upon, either by courts or juries. These last circumstances are of course no bar to the recovery in the action at law, for an infringement of a patent, but they disable a party from obtaining an injunction in advance.

If an injunction should issue in advance of the trial in a case like this, without any of the above circumstances to justify the right claimed by the patent, it should issue in all cases on the patent alone, though resisted and impugned by the opposite party. But such never has been the law, and if the practice was adopted, it would produce often heavy losses and irreparable mischief among conflicting claimants. While the present course gives ample redress in damages, if the plaintiff succeed for an infringement, and moreover, in case of long use, numerous sales, or previous recoveries, adding strength and greater probability of validity to his patent beyond merely getting it out, will assist him by a preliminary injunction. In Orr v. Littlefield [Case No. 10,590], where most of the precedents are collected, not a case is given where an injunction, when resisted, was granted, unless a possession and use of the patent had existed for some time. The shortest was three years, and, in most of the cases there collected, the time had been several years longer. Here the time had not been one month before the alleged infringement, and only about half a year before this suit was instituted, being, in the words of the decision in 3 Mer. 624, a patent of but "yesterday," when the alleged violation occurred. In most of these cases, also, there had been numerous sales of the patent, and recoveries for violations. Here there had been none of either. Again, in many cases there referred to, it is shown that when possession for some years has existed, or numerous sales, or recoveries, the court will not refuse an injunction, or dissolve it on a denial of the validity of the patent by a respondent, either through affidavits, or an answer, or other pleadings. Yet, on the other hand, as there shown, if none of those fortifying circumstances exist, courts will not only refuse an injunction, if one has not before been granted, but also dissolve it if it has been previously allowed, provided the validity of the patent is denied or brought into doubt. Here there is an entire absence of all those fortifying circumstances, and there are also pleadings in this denying the validity of the patent, as well as in the case at law in relation to this same subject. Besides these considerations, some doubts are cast on the originality and validity of the patent for the grinder by the evidence of Nourse, Eddy, and others; and an issue on that is framed, and is to be tried in the action at law, and, without deciding on that question now, except pro forma, as before remarked, in order to reach the other points, it is doubtful enough to prevent the allowance of an injunction, where none of the counterbalancing and fortifying circumstances exist that have just been referred to. Rogers v. Abbot [Case No. 12,004].

The injunction, then, cannot be granted, as the case now stands; but I shall not dismiss the bill, till it can be seen during the term, whether any new facts shall be developed by the trial or otherwise, that may require a different disposition to be made of it, in order to enforce substantial justice between these parties. Injunction refused.

[NOTE. For an action at law between the same parties for damages for violation of the patent, which resulted in a judgment of nonsuit, see Case No. 6,746, following, which case also contains an opinion by Woodbury, Circuit Justice, on complainant's motion that no costs be allowed respondent except in the action at law.]